UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bachman's Inc.,

    Plaintiff,

v.

Florists' Mutual Insurance Co.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 20-2399 (MJD/DTS)

---

Thomas J. Shroyer, Matthew P. Kostolnik and Aaron P. Minster, Moss & Barnett, A Professional Association, Counsel for Plaintiff.

Dale O. Thornsjo and Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Counsel for Defendant.

---

This matter is before the Court on Defendant Florists' Mutual Insurance Co.'s ("Florists") motion to dismiss. (Doc. No. 10)

**I.    Background**

Plaintiff Bachman's, Inc. ("Bachman's") is a family-owned business that primarily sells perishable floral and garden products at retail stores throughout the Twin Cities Metropolitan Area. (Comp. ¶ 1.) Florists is a specialty insurance company whose customers are professional horticulturalists. (Id. ¶ 13.)

1

Bachman's claims that to protect its business in case it had to suspend business operations outside its control, it bought an insurance policy from Florists. (Id. ¶ 4.) In the spring of 2020, when the growing season had begun, Bachman's suffered a business interruption loss during the global coronavirus pandemic and was forced to close its retail stores and limit its wholesale operations. (Id. ¶ 5.) Bachman's submitted a business interruption claim to Florists on or about April 7, 2020. (Id. ¶ 20.) Florists denied the claim. (Id.)

Bachman's brought an action in Minnesota state court, seeking a declaration that Florists' denial of the claim was wrongful and a breach of its duties under the insurance policy. Florists removed the action to federal court based on diversity jurisdiction.

Florists has moved to dismiss Bachman's complaint because the insurance policy does not provide coverage for Bachman's claimed losses.

## II.   Standard for Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.  For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint."  Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).  The Court must also consider documents incorporated into the complaint by reference.  Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 322 (2007).

Minnesota law governs the interpretation of the policy at issue.  W3i Mobile, LLC v. Westchester Fire Ins. Co., 632 F.3d 432, 436 (8th Cir. 2011) (in a diversity action, the federal courts apply the substantive law of the forum when

interpreting an insurance policy). Under Minnesota law, general contract principles apply to insurance policies. Id. (citing Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)). "The policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning." SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995) (citing Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn. 1986)). Any ambiguity is construed in favor of the insured. Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995).

"[T]he initial burden of proof is on the insured to establish a prima facie case of coverage." SCSC Corp., 536 N.W.2d at 311 (citing Boedigheimer v. Taylor, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970) overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009)).

### III. Discussion

#### A. The Policy

Florists issued a Business Package Policy to Bachman's, policy no. BP-00424, effective 02/01/20 to 02/01/21 (the "Policy"). The Policy defines coverage for Business Income as:

A. Coverage

>We will pay up to the Business Income Limit of Insurance as shown on the Declarations for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be due to direct physical loss of or direct physical damage caused by or resulting from a Covered Cause of Loss to Covered Property located at the described premises.
>
>With respect to loss of or damage to Business Personal Property in the open or in a vehicle, the described premises include the area within 1000 feet of such premises.
>
>If you are a tenant, this Coverage applies to that portion of the building which you rent, lease or occupy, and extends to common service areas and access routes to your area.
>
>    \*\*\*
>
>B.  Covered Causes Of Loss, Exclusions And Limitations
>
>See applicable Causes Of Loss form as shown in the Declarations.

(Richey Decl. Ex. A (Policy at 000011-000012).)

In addition to the "Standard Covered Causes of Loss" which are defined in Section II[1], the Policy provides coverage for "Special Causes Of Loss" which are defined in Part III as "Other risks of direct physical loss unless excluded or limited."  (Id. at 000039).)

---

[1] Standard Causes of Loss include physical loss or damage due to fire, lightning, smoke, aircraft or vehicles, sinkhole collapse, volcanic action, windstorm or hail, explosion, riot or civil commotion, weight of snow, ice or sleet, vandalism, sprinkler leakage, falling objects, and water damage.  (Doc. No. 19, Minster Decl. Ex. 3 at Policy125-Policy127.)

**B.    Coverage Determination**

The issue to be decided is whether the Policy covers loss of business income that resulted from the government shutdown orders issued in the State of Minnesota.  More specifically, whether shutting down Bachman's retail stores because of the shutdown was a loss "due to direct <u>physical loss of or direct physical damage caused by or resulting from</u> a Covered Cause of Loss to Covered Property located at the described premises."  For the reasons set forth below, the Court finds no coverage for the claimed losses.

Under Minnesota law, "direct physical loss" of property requires a showing that the insured property is injured in some way, which can include something less than structural damage or some other tangible injury – such as contamination by asbestos, pesticides or smoke.  See <u>Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.</u>, 98 N.W.2d 280, 290 (Minn. 1959) (involving smoke contamination in building);  <u>General Mills, Inc. v. Gold Medal Ins. Co.</u>, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (building contaminated with unapproved pesticide); <u>Sentinel Mgmt. Co. v. New Hampshire Ins. Co.</u>, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (building contaminated by asbestos).

In a case analogous to this case, an insured submitted a claim for lost business income because of the government-mandated closure of his hair salon and barbershop because of COVID-19. Seifert v. IMT Insurance Co., __ F. Supp. 3d __, Civ. No. 20-1102 (JRT/DTS), 2020 WL 6120002 (D. Minn. Oct. 16, 2020). The policy at issue provided coverage for "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' . . . The suspension must be caused by direct physical loss of or damage to the property at the described premises." The loss or damage must be caused by or result from a Covered Cause of Loss." Id. at * 1. "Covered Causes of Loss" was defined as "[d]irect physical loss[es] unless the loss is excluded." Id.

The court first noted that under Minnesota caselaw, it is unnecessary to show there is structural damage to qualify for coverage; coverage can be shown when business premises is contaminated by asbestos or smoke. Id. at * 3 (citing Sentinel Mgmt. Co. v. New Hampshire Ins. Co., 563 N.W.2d 296, 300 (Minn. Ct. Ap. 1997); General Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 152 (Minn. Ct. App. 2001)).

> In short, "[i]t is sufficient to show that the 'insured property is injured in some way,' which may be something less than structural damage or some other tangible injury." See Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota, No. 97-2185, 2002 WL 31185884, at *3 (D. Minn. Sept. 27,

7

2002), aff'd 356 F.3d 850 (8th Cir. 2004). However, this is not to say that a qualifying loss is established "whenever property cannot be used for its intended purpose." Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co., 400 F.3d 613, 616 (8th Cir. 2005). Actual physical contamination of the insured property is still required. See Source Food Tech. Inc. v. U.S. Fid. & Guar. Co., 465 F.3d 834, 837-38 (8th Cir. 2006). Simply claiming "mere loss of use or function" is not enough. Pentair, 400 F.3d at 616; see also Hampton Foods, Inc. v. Aetna Cas. & Sur. Co., 787 F.2d 349, 352 (8th Cir. 1986).

Id. The court ultimately found that an economic loss claim, without facts showing the covered properties were actually contaminated or damaged by the coronavirus, is not a covered loss. Id. See also Torgerson Properties, Inc. v. Continental Cas. Co., Civ. No. 20-2184, 2021 WL 615416 (D. Minn. Feb. 17, 2021) (finding business interruption losses caused by government shutdown not covered).

In Pentair, Inc., the Eighth Circuit held that under Minnesota law, mere loss of use and function of a factory was not a direct physical loss where the factory was shut down because of an earthquake that disabled a third-party electrical substation powering the factory. 400 F.3d at 616.

> Pentair relies on two Minnesota Court of Appeals opinions that emphasized the functional impairment of insured property in concluding that the insureds had established "direct physical loss." Sentinel Mgt. v. N.H. Ins. Co., 563 N.W.2d 296, 300 (Minn.App.1997), followed in General Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 152 (Minn.App.2001). But in those cases, insured property was physically contaminated—a building by the release of asbestos fibers in Sentinel, and grain by

8

application of an unapproved pesticide in General Mills. Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss. But Pentair's argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose. The Minnesota Court of Appeals has not read Sentinel so broadly. See Rest Assured, Inc. v. Amer. Motorist Ins. Co., 1999 WL 431112 (Minn.App.1999). Nor, in our view, would the Supreme Court of Minnesota. See Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co., 256 Minn. 404, 98 N.W.2d 280, 297 (1959). Thus, although electric power has a "physical" element, the district court's construction is consistent with the plain language of Section 11 of the policy.

Id.

Bachman's argues that under Minnesota law, a covered loss of property includes a property that cannot perform its intended function. As discussed above, however, each Minnesota case in which coverage was found involved actual contamination of the property at issue. Bachman's does not plead the virus was on the premises to even allow consideration on whether its presence was in a sufficient amount to constitute a change, alteration or contamination of the premises. But even if Bachman's had made such an allegation, there can be no dispute that the virus can be easily eliminated with routine cleaning procedures. See Uncork & Create LLC v. Cincinnati Ins. Co., __ F. Supp. 3d __, 2020 WL 6436948 at *5 (S.D. W.Va. Nov. 2, 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance

9

policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.").

The majority of courts in other jurisdictions have found that the loss of use of property because of government closure orders because of COVID-19 does not constitute a direct physical loss of property to trigger coverage. See e.g., Palmdale Estates, Inc. v. Blackboard Ins. Co., 2021 WL 25048, at *2 (N.D. Cal. Jan. 4, 2021) (recognizing the majority view is that direct physical loss does not cover lost business income resulting from closure orders due to COVID); Palmer Holdings and Investments, Inc. v. Integrity Ins. Co., __ F. Supp. 3d __, 2020 WL 7258857, at *10 (S.D. Iowa, Dec. 7, 2020) (finding it is settled law in Iowa that direct physical loss or damage requires tangible alteration of property and that loss of use alone is insufficient); Carrot Love, LLC. v. Aspen Spec. Ins. Co., 20-23586, 2021 WL 124416 at *2 (S.D. Fla. Jan. 12, 2021) (finding courts around the

country have almost uniformly held that economic losses resulting from COVID-19 are not covered under "all risk" policy language because such losses were not caused by direct physical loss or damage to property); <u>Sandy Point Dental, PC v. Cincinnati Ins. Co.</u>, __ F. Supp. 3d __, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) (denying coverage for business losses due to COVID-19 under Illinois law); <u>Rose's 1, LLC v. Erie Ins. Exchange</u>, No. 2020 CA 002424 B, 2020 WL 4589206, at *3 (D.C. Super, Aug. 6, 2020) (interpreting policy language similar to that at issue, and finding that loss of use without physical alteration to the insured property did not trigger coverage because "under a natural reading of the term 'direct physical loss,' the words 'direct' and 'physical' modify the word 'loss.' As such, pursuant to Plaintiffs' dictionary definitions, any 'loss of use' must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property."); <u>see also</u> <u>Diesel Barbershop, LLC et al. v. State Farm Lloyds</u>, 479 F. Supp. 3d 353 (W.D. Tex. 2020) (finding line of cases that require tangible injury to the property are more persuasive, and that plaintiff failed to plead a direct physical loss).

Because Bachman's has failed to allege any structural damage to the property, or that the property has been contaminated or otherwise injured, the Court finds that the Policy does not provide coverage for the business interruption losses claimed by Bachman's when the State of Minnesota issued closure orders because of COVID-19. Accordingly, the Court will grant Florist's motion to dismiss.

IT IS HEREBY ORDERED that Defendant Florists' Mutual Insurance Co.'s Motion to Dismiss (Doc. No. 10) is GRANTED. This matter is hereby dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date:  March 16, 2021

                                      s/Michael J. Davis
                                      Michael J. Davis
                                      United States District Court